| | |
|---|---|
| | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL HONEYCUTT | No. 2:16-cv-1650-KJN |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Daniel Honeycutt seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 9, 2003, plaintiff's alleged disability onset date, through December 31, 2008, plaintiff's date last insured. (ECF No. 19.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 22.) Thereafter, plaintiff filed a reply brief. (ECF No. 25.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 10.)

1

After carefully considering the record and the parties' briefing, the court GRANTS IN PART plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the action for further administrative proceedings.

I. BACKGROUND

Plaintiff was born on August 13, 1956; did not graduate high school, but completed 2 years of college; can communicate in English; and previously worked as an accountant, billing manager, and computer services analyst. (Administrative Transcript ("AT") 32-33, 42-43, 183, 185.)[2] On November 15, 2012, plaintiff applied for DIB, alleging that his disability began on September 9, 2003. (AT 21, 85, 100, 167.) Plaintiff claimed that he was disabled due to panic disorder and some symptoms indicating possible multiple sclerosis. (AT 184.) After plaintiff's application was denied initially and on reconsideration, an administrative law judge ("ALJ") conducted a hearing on April 17, 2014. (AT 39-73.) The ALJ subsequently issued a decision dated August 15, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from September 9, 2003, plaintiff's alleged disability onset date, through December 31, 2008, plaintiff's date last insured. (AT 21-34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 19, 2016. (AT 1-3.) Plaintiff subsequently filed this action on July 18, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly discounted the opinion of plaintiff's treating physician, Dr. Ehyai; and (2) whether the ALJ erroneously discounted plaintiff's own testimony regarding his symptoms and functional limitations.

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ determined that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

1  insured status requirements of the Act for purposes of DIB through December 31, 2008. (AT 23.)
2  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity
3  from September 9, 2003, his alleged disability onset date, through December 31, 2008, plaintiff's
4  date last insured. (Id.) At step two, the ALJ found that plaintiff had the following severe
5  impairment through the date last insured: panic disorder. (Id.) However, at step three, the ALJ
6  determined that, through the date last insured, plaintiff did not have an impairment or
7  combination of impairments that met or medically equaled the severity of an impairment listed in
8  20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, repetitive tasks in a nonpublic work setting.

(AT 25.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work through the date last insured. (AT 32.) However, at step five the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed through the date last insured. (AT 33.)

Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from September 9, 2003, plaintiff's alleged disability onset date, through December 31, 2008, plaintiff's date last insured. (AT 34.)

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ improperly discounted the opinion of plaintiff's treating physician, Dr. Ehyai*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

For a significant part of the period under review, plaintiff was treated for his panic disorder, resulting in various somatic physical and neurological symptoms such as pain, numbness, tingling, other paresthesia, impaired gait, and broken speech, by neurologist Dr. Reza Ehyai. Over that time period, Dr. Ehyai opined on several occasions that plaintiff's panic disorder precluded him from returning to work, especially due to the frequency of panic attacks and the role of stress. The ALJ's decision primarily gave little weight to Dr. Ehyai's opinion, because, according to the ALJ, Dr. Ehyai's treatment records reflected that plaintiff's condition had improved with continued treatment and was fairly stable. (AT 31-32.) The problem with that reasoning is that, although Dr. Ehyai's records certainly document improvement and some degree of stability, the records also potentially suggest that the level of plaintiff's symptoms, even if somewhat stable, may nonetheless have precluded employment. See, e.g., AT 402 ("Although, his anxiety level has improved with medication, still he experiences panic attacks during the daytime…."); AT 400 ("The patient is still symptomatic. Inderal and Xanax are helping, as well as Lexapro. When he gets a panic attack, he becomes confused, has palpitations, shortness of breath, and tremor. His symptoms return frequently under stressful situations and social events."); AT 388 ("Although the frequency of his panic attacks with current treatment have improved, nevertheless, they do occur several times per week, particularly under stressful situations. The symptoms include dizziness, perspiration, paresthesia, and difficulty concentrating.").

Of course, that possibility is not to say that the ALJ was required to accept Dr. Ehyai's opinion, but the ALJ's reasons for giving little weight to Dr. Ehyai's opinion are not persuasively supported by the record. Furthermore, no consultative examination of plaintiff was ordered, and the opinions of the non-examining physicians alone are insufficient to reject the opinion of plaintiff's treating physician. Lester, 81 F.3d at 831.

Therefore, the court finds it appropriate to remand the action for further proceedings, including a consultative examination with an appropriate mental health specialist, who is provided with full access to plaintiff's prior records. Any opinion rendered by such a consultative examiner would necessarily be retrospective. However, the consultative examiner shall

nonetheless endeavor to formulate an opinion regarding plaintiff's mental functional capacity during the relevant period, based on a contemporaneous personal evaluation of plaintiff as well as a thorough review of plaintiff's prior records during the relevant period. The ALJ is also free to develop the record in other respects, such as by obtaining supplemental vocational expert testimony, if appropriate. Importantly, the court does not instruct the ALJ to credit any particular opinion on remand. Indeed, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand, provided that the ALJ's decision is based on proper legal standards and supported by substantial evidence in the record as a whole.

*Other Issues*

In light of the court's conclusion that the case should be remanded for further development of the mental health evidence, the court declines to reach the issue of plaintiff's credibility at this juncture. On remand, the ALJ will have an opportunity to reevaluate her credibility findings, if appropriate.

The court also notes plaintiff's request in the record to have a different ALJ assigned to this matter on remand. However, although this court disagreed with portions of the ALJ's analysis, nothing on this record indicates that the assigned ALJ could not be a fair and impartial adjudicator on remand. Therefore, the request for reassignment is denied.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is DENIED.

3. The Commissioner's final decision is REVERSED, and the action is REMANDED for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Plaintiff's request for reassignment of this case to another administrative law judge is DENIED.

5. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: December 21, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE